GLADNEY, Judge.
This action in tort was brought by William Franklin Wooley and his wife, Lillian Smith Wooley, against Sterling W. Chandler and The Travelers Indemnity Company, to collect damages arising from the death of their unmarried daughter, Hazel Leu Wooley, which occurred in an automobile accident on November 13, 1959, about midnight. A Lincoln convertible owned by Sterling W. Chandler and in which he and Hazel Leu Wooley were riding, turned over on Highway No. 71 about twelve miles north of Coushatta, in Red River Parish, Louisiana. The trial judge rendered this short opinion:
“In this case the burden was on the plaintiff to prove by a preponderance or greater weight of the evidence that Sterling W. Chandler was driving the Lincoln automobile involved in this accident at the time of the accident. Sterling W. Chandler is the only living person who knows for sure who was driving that car on that fateful night; he apparently was the only one who had the opportunity for knowledge, all of the other evidence that was re-ciptable (sic) was circumstantial, and speculative. I have studied and analyzed the evidence but can find nothing to overcome the positive testimony of Chandler that he was not driving the car at the time of the accident.”
The record discloses that on the morning of the accident Hazel Wooley telephoned her doctor, Dr. David C. Kimball, who thought she seemed considerably disturbed and emotionally upset and suggested she go into the hospital that afternoon for an examination of her mental status. Later the appointment was canceled when Miss Wooley advised the doctor a friend would remain at home with her. About 7:30 and again about 9:00 P.M. she telephoned her parents. She also contacted Chandler who testified he thought she appeared normal, and he told her he would take her to her parents’ home in Red River Parish, but she would have to drive. His explanation for this request, so he stated, was to allow him some sleep in advance of his work assignment for the next morning. These parties had known and dated each other for more than a year and had driven together to the home of her parents. On some occasions Hazel Wooley drove Chandler’s car.
Chandler arrived at Miss Wooley’s apartment about 11:00 P.M. and they left promptly in Chandler’s maroon or red Lincoln convertible. According to Chandler, they traveled south on U. S. Highway 71 with Hazel Wooley driving and after a few miles he went to sleep with his head resting on her lap, and remained asleep until the very moment of the accident.
It was a rainy night and the automobile, while traveling at a high rate of speed, left the highway to the right and turned over, coming to rest upside down with the two occupants pinned beneath the car. Miss Wooley was killed, perhaps instantly, as she was apparently dead when the first party reached the overturned vehicle. Chandler was not so seriously injured.
This suit alleges Chandler was the driver and he and his insurer are charged with negligence. However, upon trial of the case, the single issue presented, as pointed out by the district judge in his memorandum judgment, was the identity of the person driving. If Chandler was driving, then both defendants are liable. If, on the other hand, Hazel Wooley was driving, the defendants are not responsive in damages.
The question is purely one of fact which must be determined from the physical evidence and the testimony of certain witnesses, the more important of whom are Sterling W. Chandler, Travis Bogan, Trooper B. D. Morgan, Jerry D. Cook and Walter E. Rives.
*520 Jerry D. Cook and his father-in-law, Walter E. Rives, were the first to arrive upon the scene. Later others appeared but the record fails to identify those with any degree of certainty. When found, the body of Hazel Leu Wooley was partially under and partially out from the overturned vehicle. Her head and shoulders were underneath and the lower two-thirds of the body extended on the outside. The right side of the vehicle rested upon her body.
Cook and Rives secured and inserted a jack under the left or driver’s side of the car in order to lift the weight from Chandler. After a short while another person described by Cook as a white man, and by Rives and Chandler as colored, assisted with the lifting. When the car had been sufficiently raised the left door was opened and Chandler was enabled to extricate himself by crawling on his stomach. The soft top of the car was flattened upon the ground.
Chandler gave this description of his position under the car. He said he was lying on his right side across the front seat (the back of which was broken) with his feet toward the right side of the car, and his head on the left side. One of his arms was pinned to the ground by a piece of chrome.
It is not contradicted that when the car came to rest, Chandler’s body was nearer the driver’s window than that of his companion, and he was extricated from the left side, whereas Miss Woolens body extended over the right front seat.
Jerry Cook was the first person to reach the overturned vehicle and it was through his help that Chandler was enabled to crawl from under the car through the driver’s door. He testified: “Well, after we got the man out, which was Mr. Chandler, he said something about a tire blowing on him and I went and took a look at the tire, and I found the tire had been broken free from the rim; it was flat and had been broken here.” He further testified: “We got the car up enough until Mr. Chandler could move about underneath it a little bit to try to work himself out, and he said something about there being a girl passenger with him.”
One further point that has some significance is that Trooper B. D. Morgan testified Walter E. Rives told him a man was driving the car. In his deposition taken a year later, however, Rives could not remember making this statement.
The testimony of Travis Bogan was seriously discredited by inconsistent statements and contradictions from other witnesses, although he disclosed a knowledge of some of the facts which indicate he probably was present at the accident, perhaps at a time later than when he says he was there. Thus, to mention but a few of the inconsistencies, he said he made the delivery of his employer’s car to the A. C. shop on November 13th; he helped Cook and Rives fix a flat tire; he observed the accident; and he helped remove Chandler’s body from the rear of the car. We think his testimony is completely discredited. He testified that just prior to the accident the Lincoln passed him at eighty miles per hour and he saw a man driving. Forasmuch as so much of his testimony is unbelievable, we reject it in toto.
An effort was made to impeach the testimony of Chandler and upon cross examination Chandler admitted that he had been involved in some ten traffic violations between November 24, 1953 and November 7, 1958, and that he had been discharged from the Air Force under Air Force Regulation No. 39-17, which, however, he stated was an honorable discharge. The traffic violations involved excessive speeds of as much as one hundred miles per hour. There are two statements made by the defendant which create a suspicion that he was driving. The first of these is his remark to Cook that he had blown a tire. The question arises: How could he be asleep and know when the tire was blown ? and secondly, his reference to Miss Wooley as a passenger indicates she was not driving. With the evidence thus presented, we feel some hesitancy in *521 overturning the decision of the trial judge, yet we feel impelled herein to accord greater weight to the uncontroverted circumstantial evidence than to the positive denial of Chandler that he was the driver of the death car. His testimony is not free from the suspicion of motive or interest. That is clear. The crucial fact which has not been explained, and for which we find no reasonable explanation, is an interchange of the positions of the bodies of the two persons within the limited space and time.
There is no doubt that the soft top of the convertible was mashed flat upon the ground and indeed, the bodies were both pinned by parts of the overturned car. We cannot imagine how in the brief moments when the car was making its one turn or one-half turn, the bodies of the two individuals in the car could have passed each other only to be found on opposite sides than they would otherwise have been sitting. It would be normal to expect to find the driver pinned underneath the wheel of the automobile or at least clinging tightly to it during the few moments while the car was turning over. Even should the driver be dislodged by some force from the position underneath the wheel, more than likely the person sitting to his right would prevent the driver from moving more than a foot or two. The circumstances indicate, and we so find, that Chandler was the driver of the overturned vehicle.
The court records are full of cases which have been decided upon circumstantial evidence and historically we know of such evidence is not infrequently stronger than direct testimony which is often controlled by interest and motive. In the instant case the record discloses that Chandler’s military record would be affected by the exposure of his reckless driving, which caused the death; and likewise, he could expect to be subjected to a charge of negligent homicide and a civil suit for damages. We hesitate, of course, to reverse the trial court on a pure question of fact, yet in the instant case we feel compelled to do so because of the peculiar circumstances as related above.
There remains the assessment of quantum. The policy issued by the defendant insurer has a liability limit of $5,000.00i Counsel for appellant does not urge a greater amount.
The judgment from which appealed is annulled, reversed and set aside, and it is now ordered that there be judgment in favor of William Franklin Wooley and Lillian Smith Wooley, against the defendants, Sterling W. Chandler and The Travelers Indemnity Company jointly and in solido, in the sum of Five Thousand ($5,000.00) Dollars, with interest at the rate of five per cent (5%) per annum from judicial demand until paid, defendants to pay all costs.